408 S.E.2d 614

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Raymond HAYS, Defendant Below, Appellant.**

**No. 19783.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided July 12, 1991.

---

John Earl Williams, Jr. Princeton, for appellant.

Joanna I. Tabit Deputy Atty. Gen., Appellate Div., Charleston, for appellee.

McHUGH, Justice:

This case is before this Court upon the appeal of Raymond Hays from the final judgment of the Circuit Court of Mercer County. The appellee is the State of West Virginia.

The appellant was convicted of violating *W.Va.Code*, 61–3–39 [1977], which relates to the issuing of a worthless check in exchange for "property or [a] thing of value[,]" and sentenced to one to ten years. In another count under the same indictment, the appellant was convicted of violating *W.Va.Code*, 61–3–39a [1977], which relates to the issuing of a worthless check for a preexisting debt, but that count was dismissed after the appellant paid the amount he owed for which the check was given. That count is not the primary issue in this appeal.[1]

## I

### FACTS

The appellant was the owner of a business, namely, Computer World, Inc. On January 4, 1989, the appellant presented a check in the amount of $450.00 to Mr. Riaz Darr as a security deposit for a commercial lease. The appellant testified that he had told Darr that insufficient funds were in the account at the time, and that he (the appellant) asked Darr to hold the checks (the other being for the first month's rent) until a deposit could be made, and then the appellant would notify Darr when sufficient funds were in the account to cover

---

1. With respect to the second count, for violating *W.Va.Code*, 61–3–39a [1977], the appellant had issued a worthless check to the State Tax Department. The Department presented the check for payment twice, but it was returned due to insufficient funds. Shortly before trial, the appellant paid the Department the amount due with a cashier's check. The amount at issue was $230.47. Although the appellant was convicted of violating *W.Va.Code*, 61–3–39a [1977], the conviction was set aside and the count was dismissed pursuant to *W.Va.Code*, 61–3–39b [1977], upon evidence that payment had been made on the worthless check pertaining to that charge. *W.Va.Code*, 61–3–39b [1977] provides, in part: "Payment of a dishonored check, draft or order shall *not* constitute a defense or ground for dismissal of charges brought under [*W.Va.Code*, 61–3–39]. Payment of a dishonored check ... *shall* constitute a defense or grounds for dismissal of charges brought under [*W.Va.Code*, 61–3–39a]." (emphasis supplied)

the checks. The appellant testified that Darr agreed to this arrangement.

Darr attempted to deposit the check, but it was returned due to insufficient funds in the appellant's account. Darr testified that he did not remember if the appellant had told him that there were insufficient funds in the account. However, Darr did testify that, evidently, the appellant did not tell Darr this or else Darr would not have attempted to deposit the check.

Between January and September, 1989, the appellant fell behind in making rent payments to Darr. Darr brought an action against the appellant to recover the rent due. On September 25, 1989, the appellant presented a check to Darr in the amount of $3200, which represented the security deposit and the rent for several previous months.

The appellant raises several assignments of error before this Court.

2. *W.Va.Code*, 61-3-39 [1977] provides, in pertinent part:
> It shall be unlawful for any person, firm or corporation to obtain any money, services, goods or other property or thing of value by means of a check, draft or order for the payment of money or its equivalent upon any bank or other depository, knowing at the time of the making, drawing, issuing, uttering or delivering of such check, draft or order that there is not sufficient funds on deposit in or credit with such bank o[r] other depository with which to pay the same upon presentation....
> This section shall not apply to any such check, draft or order when the payee or holder knows or has been expressly notified prior to the acceptance of the same or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment as aforesaid, nor shall this section apply to any postdated check, draft or order.
> ....
> Any person who shall violate the provisions of this section, if the amount of the check, draft or order is less than two hundred dollars, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than two hundred dollars, or imprisoned not more than six months, or both fined and imprisoned. Any person who shall violate the provisions of this section, if the amount of the check, draft or order is two hundred dollars or more, shall be guilty of a felony, and, if convicted thereof, shall be fined not more than five hundred dollars, or

## II

## VAGUENESS

The primary issue raised by the appellant is the constitutionality of *W.Va.Code*, 61-3-39 [1977] and *W.Va.Code*, 61-3-39a [1977].[2]

The appellant contends that these two statutory provisions are unconstitutionally vague and should be declared void pursuant to section one of the fourteenth amendment to the *United States Constitution*, and article III, section 10 of the *West Virginia Constitution*.[3]

The appellant claims that he may not be charged under *W.Va.Code*, 61-3-39 [1977] because his crime is defined under *W.Va. Code*, 61-3-39a [1977]. In so contending, the appellant points out that *W.Va.Code*, 61-3-39 [1977] requires the obtainment of *tangible goods*, such as money, services, goods, or other property. *W.Va.Code*, 61-

imprisoned not less than one year nor more than five years, or both fined and imprisoned. *W.Va.Code*, 61-3-39a [1977] provides, in pertinent part:

> It shall be unlawful for any person, firm or corporation to make, draw, issue, utter or deliver any check, draft or order for the payment of money or its equivalent upon any bank or other depository, knowing or having reason to know there is not sufficient funds on deposit in or credit with such bank or other depository with which to pay the same upon presentation....
> This section shall not apply to any such check, draft or order when the payee or holder knows or has been expressly notified prior to the acceptance of same or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment as aforesaid, nor shall this section apply to any postdated check, draft or order....
> Any person who shall violate the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one hundred dollars, or imprisoned not more than ten days, or both fined and imprisoned.

3. *U.S. Const.* amend. XIV, § 1 provides, in part: "No State shall ... deprive any person of life, liberty, or property without due process of law[.]" Similarly, *W.Va. Const.* art. III, § 10 provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

3–39a [1977], on the other hand, is merely for issuing a check which represents the payment of money.

Because the check at issue in this case was for a security deposit, the appellant, in support of his argument, relies upon the definition of the word "security," as that word is used in the term "security deposit." "Security" has been defined as protection, assurance, or indemnification. *Black's Law Dictionary* 1355 (6th ed. 1990). The appellant contends that such "security" is not "tangible," and, therefore, he did not receive anything tangible for the check.[4]

The State, on the other hand, emphasizes the phrase "property or thing of value," contained in *W.Va.Code*, 61–3–39 [1977]. The State maintains that because the appellant obtained the commercial lease by issuing a worthless check, then clearly he obtained "property" or a "thing of value" in violation of *W.Va.Code*, 61–3–39 [1977]. In support of this contention, the State points to the definition of "value," which is the worth of an object, or any consideration sufficient to support a simple contract. *Black's Law Dictionary* 1551 (6th ed.1990).

■ In deciding whether a criminal statute should be declared void for vagueness, this Court follows the teaching of syllabus point 1 of *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974): "A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." This "vagueness standard is well settled[.]"

*State v. Less*, 170 W.Va. 259, 263, 294 S.E.2d 62, 66 (1981). *See* syl. pt. 2, *Less;* syl. pt. 1, *State v. Reed*, 166 W.Va. 558, 276 S.E.2d 313 (1981); *State ex rel. Whitman v. Fox*, 160 W.Va. 633, 638–39, 236 S.E.2d 565, 569 (1977); *State ex rel. Cogar v. Kidd*, 160 W.Va. 371, 376–77, 234 S.E.2d 899, 902 (1977); *Anderson v. George*, 160 W.Va. 76, 84, 233 S.E.2d 407, 411 (1977) (Miller, J., concurring); *State v. Grinstead*, 157 W.Va. 1001, 1009, 206 S.E.2d 912, 918 (1974).

In *State v. Griffith*, 168 W.Va. 718, 285 S.E.2d 469 (1981), we were presented with a constitutional challenge to *W.Va.Code*, 61–3–39a to 61–3–39g, as amended, all of which deal with violations involving worthless checks. There, the defendant contended that *W.Va.Code*, 61–3–39a [1977] was unconstitutionally vague. We pointed out, though, that because the defendant was convicted of violating *W.Va.Code*, 61–3–39 [1977], and *not W.Va.Code*, 61–3–39a [1977], then this Court "will not decide constitutional challenges to a statute unless that question is necessary to a decision in the case." *Id.*, syl. pt. 2.[5]

However, in *Griffith*, we discussed the differences between *W.Va.Code*, 61–3–39 [1977] and *W.Va.Code*, 61–3–39a [1977]:

> Code, 61–3–39 relates to the knowing issuance of a worthless check in order to obtain any money, services or things of value. It is akin to obtaining property or labor by false pretenses, a Code[,] 61–3–24 crime, including similar provisions delineating felonies from misdemeanors based on the value of 'property' taken.

---

**4.** Curiously, the appellant fails to refer to the definition of "security deposit." That term is defined as "[m]oney deposited by tenant with landlord as security *for full and faithful performance by tenant of terms of lease*, including damages to premises." *Black's Law Dictionary* 1357 (6th ed.1990) (emphasis supplied).

Counsel for the appellant, however, during the oral argument of this case, acknowledged this omission in the appellant's brief.

**5.** The State asserts that the Court, in this case, is confronted with the same situation as in *Griffith*, that is, that the appellant was convicted of violating *W.Va.Code*, 61–3–39 [1977], and not *W.Va.Code*, 61–3–39a [1977]. Consequently, the State contends that we need not address the

constitutional challenge in this case. We do not agree. In *Griffith*, the defendant did not challenge the constitutionality of *W.Va.Code*, 61–3–39 [1977]. Rather, the challenge mounted in *Griffith* was directed at *W.Va.Code*, 61–3–39a to 61–3–39g, as amended, of which the defendant there was not convicted. In this case as well, the appellant has not been convicted of *W.Va.Code*, 61–3–39a [1977], but, because he asserts that his conviction of violating *W.Va.Code*, 61–3–39 [1977] *could have* come under *W.Va.Code*, 61–3–39a [1977] due to vagueness, then, inferentially, we are confronted in this case with a challenge to *W.Va.Code*, 61–3–39a [1977]. Accordingly, in this case, we address the appellant's challenge to *W.Va.Code*, 61–3–39a [1977].

Code, 61–3–39a, *a different crime*, makes it a simple misdemeanor to issue a worthless check for a preexisting debt.

168 W.Va. at 723–24, 285 S.E.2d at 472–73 (emphasis supplied).

 Under this Court's test for vagueness, set forth in *Flinn*, we do not believe that *W.Va.Code*, 61–3–39 [1977], nor *W.Va. Code*, 61–3–39a [1977] are constitutionally deficient.[6]

Rather, both statutes are very clear in their use of terms, especially, as applied to the facts of this case. The appellant herein, by issuing a worthless check for a security deposit, obtained an interest in a commercial lease for his business. Clearly, this lease represented "property or [a] thing of value" as that phrase is used in *W.Va.Code*, 61–3–39 [1977].

*W.Va.Code*, 61–3–39a [1977], on the other hand, does not involve obtaining "property or [a] thing of value," but, rather, this section proscribes, as was stated in *Griffith*, issuing worthless checks to satisfy a preexisting debt. Clearly, this statute is "set out with sufficient definiteness to give a person of ordinary intelligence fair notice" that issuing a worthless check in order to satisfy a preexisting debt is prohibited. Syl. pt. 1, *Flinn*.

 Accordingly, *W.Va.Code*, 61–3–39 [1977] and *W.Va.Code*, 61–3–39a [1977] are not unconstitutionally vague in violation of *U.S. Const.* amend. XIV, § 1, or *W.Va. Const.* art. III, § 10.[7]

**6.** Research of constitutional assaults on worthless check statutes in other jurisdictions reveals that the vagueness issue usually involves either: (1) a determination of whether the amount of *each* check or the *aggregate* amount of all checks should be considered in charging the defendant with a felony or misdemeanor; *see, e.g., State v. Baker*, 359 So.2d 110 (La.1978); or (2) interpretation of the word "issue," as that term is used in the challenged statute; *see, e.g., State v. Libero*, 91 N.M. 780, 581 P.2d 873 (Ct. App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324, *and cert. quashed*, 92 N.M. 180, 585 P.2d 324 (1978).

**7.** The appellant also contends that *W.Va.Code*, 61–3–39 [1977] and *W.Va.Code*, 61–3–39a [1977]

## III

### LESSER INCLUDED OFFENSE INSTRUCTION

The appellant contends that the trial court had a duty to instruct the jury that it could also have rendered a verdict finding the appellant guilty of violating *W.Va. Code*, 61–3–39a [1977], a misdemeanor, instead of the instruction that was given, which *only* provided for a verdict of whether or not the appellant violated *W.Va.Code*, 61–3–39 [1977].

The State asserts that the appellant was not entitled to a lesser included offense instruction under this Court's holdings in *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981), and *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982).

 In syllabus point 1 of *Louk*, this Court held:

The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.

 Syllabus point 2 of *Neider* states: "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction."

violate principles of double jeopardy. Specifically, the appellant claims that, in addition to being convicted of violating *W.Va.Code*, 61–3–39 [1977], one could also be convicted under *W.Va. Code*, 61–3–39a [1977] under the same facts as in this case. We need not address this contention. As the State points out, because "all criminal charges arising from a single criminal episode must be brought contemporaneously," and since the appellant has already been convicted of *W.Va.Code*, 61–3–39 [1977], "successive prosecutions [are] prohibited by the double jeopardy clause." *State ex rel. Leonard v. Hey*, W.Va., 269 S.E.2d 394, 398 (1980). Consequently, the appellant cannot be charged in this case with a violation of *W.Va.Code*, 61–3–39a [1977] for issuing the worthless check for a security deposit.

■ Applying the two-pronged *Louk–Neider* test to the instructions given in this case, we conclude that the appellant was not entitled to a lesser included offense instruction.

Looking specifically at the test enunciated in syllabus point 1 of *Louk*, we must determine whether it is impossible to violate the provisions of *W.Va.Code*, 61–3–39 [1977] without first violating the provisions of *W.Va.Code*, 61–3–39a [1977].

As we have stated in section II herein, this Court has addressed the distinction between *W.Va.Code*, 61–3–39 [1977] and *W.Va.Code*, 61–3–39a [1977]. *State v. Griffith*, 168 W.Va. 718, 723–24, 285 S.E.2d 469, 472–73 (1981). A plain reading of the two statutes at issue clearly indicates that a violation of *W.Va.Code*, 61–3–39a [1977] is, as we said in *Griffith*, "a different crime," from that under *W.Va.Code*, 61–3–39 [1977]. *W.Va.Code*, 61–3–39 [1977] proscribes issuing worthless checks in order to obtain "property or [a] thing of value[,]" while *W.Va.Code*, 61–3–39a [1977] proscribes issuing a worthless check in order to satisfy a preexisting debt.

This distinction is supported by a case decided by this Court more than twenty years prior to the enactment of *W.Va. Code*, 61–3–39a [1977]. In syllabus point 3 of *State v. Stout*, 142 W.Va. 182, 95 S.E.2d 639 (1956), the Court held: "Making, uttering and delivering a worthless check as payment on a pre-existing debt, where the maker receives no property or thing of value, is *not* a crime under Code, 61–3–39." (emphasis supplied)

Under the test in syllabus point 2 of *Neider*, there must be an evidentiary dispute as to the elements of the two offenses which are different from each other before the appellant is entitled to a lesser included offense instruction.

In this regard, the appellant contends that the jury, given the lesser included offense instruction, might have determined that the payment of money for a security deposit would be a violation of *W.Va.Code*, 61–3–39a [1977] instead of *W.Va.Code*, 61–3–39 [1977]. We do not agree with this contention. There is no evidentiary dispute in this case. As we have pointed out, the appellant, in exchange for issuing a worthless check, obtained a security deposit for a commercial lease.[8]

There is no evidentiary dispute that the appellant obtained a security deposit for a commercial lease in exchange for a worthless check. By obtaining a security deposit for a commercial lease in exchange for the worthless check, clearly, the appellant obtained "property or [a] thing of value" as that term is used in *W.Va.Code*, 61–3–39 [1977].

Nothing in *W.Va.Code*, 61–3–*39a* [1977] indicates that a security deposit for a commercial lease is a preexisting debt under *that* section. Despite the passing of several months between the time that the appellant issued the worthless check for the security deposit and the time that he finally made payment therefor, the appellant committed a violation of *W.Va.Code*, 61–3–*39* [1977]. This violation occurred at the time that the appellant issued the worthless check in exchange for the security deposit. In other words, the security deposit in this case never became a preexisting debt under *W.Va.Code*, 61–3–39a [1977].

Therefore, because *W.Va.Code*, 61–3–39 [1977] is a different crime from *W.Va. Code*, 61–3–39a [1977], the trial court did not commit error by not giving a lesser included offense instruction.

Accordingly, a violation of *W.Va.Code*, 61–3–39a [1977] is not a lesser included offense of *W.Va.Code*, 61–3–39 [1977]. Consequently, a defendant who is accused of violating *W.Va.Code*, 61–3–39 [1977] is not entitled to a "lesser included offense" instruction reflecting the elements of *W.Va.Code*, 61–3–39a [1977].

---

**8.** The indictment charges the appellant with "unlawfully and feloniously delivering a check drawn on the account of Computer World, Inc. executed by Raymond W. Hays … *for security deposit on rental of office space*, when he knew at the time of delivery of the check that he did not have sufficient funds on deposit[.]" (emphasis supplied)

672

## IV

## CONDUCT OF TRIAL COURT PROCEEDINGS

The appellant raises errors with respect to the conduct of the trial court proceedings which we address in this section of our opinion.

### A. *Rejection of Plea Agreement*

Before the trial in this case, the appellant and the State proffered a plea agreement to the trial court. Pursuant to the agreement, the appellant was to plead guilty to the second count of the indictment in this case, which, as noted at the beginning of this opinion, was for violating *W.Va.Code*, 61-3-39a [1977]. *See supra* note 1. In exchange for a guilty plea to the misdemeanor, then the first count, upon which this appeal is based, for violation of *W.Va. Code*, 61-3-39 [1977], a felony, would be dismissed.

Apparently, however, upon a realization that the appellant could only be sentenced to a maximum of ten days imprisonment for pleading guilty to *W.Va.Code*, 61-3-39a [1977], the trial court rejected the proferred plea agreement.[9] The appellant points to the record of the hearing on the plea agreement to support his contention that the trial judge based his decision to reject the agreement *solely* on the fact that the appellant could not be sentenced to more than ten days in prison. The following transpired at that hearing:

THE COURT: ... It's a very simple agreement as I understand. Your [sic] going to plead guilty to the second count of the indictment charging you with misdemeanor worthless check, which would subject you—and again, I need to check, is there a fine involved in that? Is this right, that he could just get ten days is the maximum fine?

MR. WILLIAMS [Defense counsel]: That's right, Your Honor.

THE COURT: I'm not sure if I'm prepared to accept this plea agreement with a person of Mr. Hayes' [sic] experience writing checks, that he would be subject to ten days in jail[.]

In syllabus point 6 of *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984), this Court set forth guidance for trial courts in determining whether to accept a plea agreement:

A primary test to determine whether a plea bargain should be accepted or rejected is in light of the entire criminal event and *given the defendant's prior criminal record* whether the plea bargain enables the court to dispose of the case in a manner commensurate with the seriousness of the criminal charges and the character and background of the defendant.

(emphasis supplied)

We do not agree with the appellant's assertion that the trial judge based his decision solely on the sentencing limits of *W.Va.Code*, 61-3-39a [1977]. It is obvious from the transcript of the hearing, set forth above, that the trial judge was concerned with the appellant's history of writing worthless checks. The presentence report, filed with the trial court, indicates the appellant's involvement with numerous incidents involving worthless checks extending over a period of several years. Clearly, this was proper under our holding in *Myers*.[10]

### B. *Bank Statement Relating to Plea Discussion*

During the trial, the prosecutor, upon cross-examining the appellant, asked the appellant about a bank statement which

9. Under *W.Va.Code*, 61-3-39 [1977], the term of imprisonment for the *felony* aspects of that section is "not less than one year nor more than five years[.]" *See infra* section V.

10. The appellant also seeks to extend this Court's holding in *State v. Satterfield*, 182 W.Va. 365, 387 S.E.2d 832 (1989), which holds that the discretion in management of criminal cases is vested in the prosecutor. *Id.*, syl. pt. 1. The

appellant desires to vest the decision to accept plea agreements in the prosecutor. *Satterfield* merely recognizes what a prosecutor may do in trying a case, especially with respect to bringing charges. It does nothing to alter the *trial court's* decision-making authority in regard to accepting or rejecting plea agreements, which emanates from Rule 11(e)(3) and (4) of the *West Virginia Rules of Criminal Procedure*.

was used in negotiating the (rejected) plea agreement. Following objection by defense counsel, the trial court admonished the prosecutor to not refer to a "prior hearing," but to just ask directly about the document. The prosecutor's following question, however, referred to "one day last week," which was a reference to the hearing on the plea agreement.

The appellant contends that the prosecutor violated Rule 11(e)(6) of the *West Virginia Rules of Criminal Procedure,* which bars the use of certain statements made during plea agreement discussions.[11] We do not agree with this contention.

This issue is not, as the parties suggest in their briefs, a question of admissibility of the bank statement under *W.Va. R.Crim.P.* 11(e)(6).[12] Rather, the prosecutor was merely questioning the appellant as to the contents of the bank statement.

Accordingly, our review of the record in this instance goes to whether or not the appellant was prejudiced by the trial court allowing the prosecutor to cross-examine the appellant about the bank statement—*not* whether the bank statement was admissible, inadmissible, or in violation of *W.Va.R.Crim.P.* 11(e)(6).

■■■ Based upon our review of the record, we conclude that the appellant was not prejudiced by the prosecutor's remarks

in this regard, and, therefore, there was no error by the trial court in allowing the prosecutor's references to the bank statement at the trial in this case.[13]

### C. *Trial Court's Demeanor Toward Appellant*

The appellant also contends that the trial court's demeanor toward him was prejudicial.

Specifically, the appellant points to remarks made by the trial judge concerning prior incidents involving worthless checks, in violation of Rule 404(b) of the *West Virginia Rules of Evidence.*[14] This contention is meritless. As the State points out to this Court, collateral evidence was not even introduced *at the trial* of this case.

The appellant further contends that he was prejudiced by remarks made by the prosecutor in her closing statement, which remarks were to the effect that the appellant knew the law concerning the writing of worthless checks. This, the appellant claims, was a direct reference to prior acts, and, thereby, the prosecutor placed the defendant's character at issue, in violation of Rule 404(a)(1) of the *West Virginia Rules of Evidence.*[15]

■■■ This contention has no merit either. During cross-examination of Mr.

---

**11.** *W.Va.R.Crim.P.* 11(e)(6) provides, in part:

(6) Inadmissibility of Pleas, Plea Discussions, and Related Statements.—Except as otherwise provided in this paragraph, evidence of *the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions;*

(A) A plea of guilty which was later withdrawn;

(B) A plea of nolo contendere;

(C) Any *statement* made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

(D) Any *statement* made in the course of plea discussions with an attorney for the state which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

(emphasis supplied) *See also* Rule 410(3) of the *West Virginia Rules of Evidence,* which refers to *W.Va.R.Crim.P.* 11.

**12.** For a discussion of the limitations of Rule 11(e)(6) of the *Federal Rules of Criminal Procedure,* which rule is nearly identical to this state's

version, *see United States v. Magee,* 821 F.2d 234, 243 (5th Cir.1987); *United States v. Rutkowski,* 814 F.2d 594, 599 (11th Cir.1987).

**13.** This case does not present for decision whether a bank statement is a "statement" for purposes of *W.Va.R.Crim.P.* 11(e)(6). Accordingly, we leave that question for another day.

**14.** *W.Va.R.Evid.* 404(b) provides:

(b) *Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**15.** *W.Va.R.Evid.* 404(a)(1) provides:

(A) *Character Evidence Generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of

Darr, counsel for the appellant elicited testimony regarding a civil suit that Darr had brought against the appellant for nonpayment of rent. The prosecutor's remark during her closing statement merely referred to the appellant putting his landlord, Mr. Darr, through court proceedings. Even if this remark had any bearing on the verdict in this case, it was within the evidence. "Great latitude is allowed counsel in argument of cases, but counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury, nor permit or encourage witnesses to make remarks which would have a tendency to inflame, prejudice or mislead the jury." Syl. pt. 2, *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978).

 As for other remarks made by the prosecutor, such as the statement concerning that the appellant knew the law dealing with worthless checks, our review of the record indicates that such remarks did not clearly prejudice the appellant, nor did they result in manifest injustice. "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt. 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982).

Consistent with the foregoing, we find no error in the trial court's proceedings.

## V

### SENTENCING

Finally, the appellant asserts that the trial court committed error by sentencing the appellant to the maximum term of imprisonment under the statute. Counsel for

the appellant, however, has overlooked an obvious error made by the trial court in sentencing the appellant.

 The appellant was sentenced to prison for a term of one to ten years. However, the maximum term of imprisonment under *W.Va.Code*, 61-3-39 [1977] is only one to *five* years.

Accordingly, we remand this case to the trial court so that it may impose a correct sentence pursuant to the procedures set forth in Rule 35 of the *West Virginia Rules of Criminal Procedure*.[16]

 As for the appellant's contention that the trial court erred by sentencing the appellant to the *maximum* term of imprisonment under the statute, we do not agree. The trial court had before it a report of the appellant's history of issuing worthless checks. The appellant's history of issuing worthless checks was a permissible factor in sentencing the appellant. "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

 Furthermore, based upon this history, there was nothing improper about the trial court's determination in sentencing the appellant to the maximum term.

## VI

### CONCLUSION

This case is remanded so that the appellant can be properly sentenced pursuant to

---

proving that he acted in conformity therewith on a particular occasion, except:
 (1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecutor to rebut the same[.]

16. *W.Va.R.Crim.P.* 35 provides:
 *Correction or Reduction of Sentence.* (a) *Correction of Sentence.* The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.
 (b) *Reduction of Sentence.* A motion to reduce a sentence may be made, or the court

may reduce a sentence without motion[,] within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court of Appeals denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

*W.Va.Code,* 61–3–39 [1977]. In all other respects, however, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed in part; Remanded for proper sentencing.