# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0072**  (Harrison County 15-F-33-2)

**Donald Richardson Jordan,**
**Defendant Below, Petitioner**

**FILED**

**November 18, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Donald Richardson Jordan, by counsel Holly Turkett, appeals the circuit court's December 23, 2015, orders denying his motion for judgment of acquittal and sentencing him for the crimes of brandishing a deadly weapon, wanton endangerment involving a firearm, malicious assault, and possession of a controlled substance. Respondent the State of West Virginia, by counsel Chase T. Harrington and Zachary Viglianco, filed a response[1] in support of the circuit court's order.[2] Petitioner also submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 13, 2014, petitioner was arrested and charged with two counts of wanton endangerment. In January of 2015, a Harrison County grand jury returned a nine count indictment against Willie Edward Dukes and petitioner. Mr. Dukes was charged with three counts of wanton endangerment involving a firearm; one of those counts identified petitioner as a victim of such crime. However, petitioner was charged with one count each of brandishing a deadly weapon, wanton endangerment involving a firearm, assault during the commission of a felony, malicious assault, and two counts of possession with intent to deliver a controlled

---

[1] Respondent submitted its original response brief on June 6, 2016. However, on June 14, 2016, respondent moved to amend its brief, and petitioner did not submit a response to that motion. On June 6, 2016, respondent moved to supplement the appendix. By order entered on October 5, 2016, this Court granted both of respondent's motions.

[2] Mr. Harrington was permitted to participate in the filing of respondent's brief pursuant to Rule 10 of the West Virginia Rules for Admission to the Practice of Law.

1

substance.[3] Mr. Dukes was identified as the victim in petitioner's malicious assault charge. In September of 2015, Mr. Dukes pled guilty to two counts of wanton endangerment involving a firearm.

Petitioner filed several pretrial motions, including a motion to dismiss the indictment, alleging that it had been procured with insufficient evidence. He also asked the circuit court to exclude his alleged statement to officers that he had "no regrets" and exclude evidence recovered from his pants at the time of his arrest. He further sought to sever his gun-related offenses from his drug-related offenses. The circuit court denied all of petitioner's pretrial motions. Petitioner was tried before a jury beginning on October 13, 2015, in a four-day trial. At the conclusion of the trial, the jury found petitioner guilty of brandishing a deadly weapon, wanton endangerment involving a firearm, malicious assault, and the lesser included offense of possession of a controlled substance. However, he was found not guilty of assault during the commission of a felony.

Following his convictions, petitioner filed a motion for judgment of acquittal on the grounds of insufficient evidence. The circuit court denied that motion. The circuit court then sentenced petitioner to serve one year of incarceration for brandishing a firearm, five years for wanton endangerment involving a firearm, and two to ten years for malicious assault. This appeal followed.

On appeal, petitioner asserts seven assignments of error. Due to the variety of these alleged errors, we will set forth the standard of review specific to each below. First, he argues that "[t]he indictment improperly joined victims as co-defendants and thus the [circuit c]ourt improperly denied [petitioner's] motion for separate trial." Petitioner contends that because he and Mr. Dukes were both co-defendants and alleged victims, their joinder in the indictment was prejudicial pursuant to Rule 14(b) of the West Virginia Rules of Criminal Procedure. Without citation to any legal precedent, petitioner asserts that "had the matter been jointly tried over his objection he would have been forced to be a witness against his co-defendant/assailant/alleged victim and vice versa." However, as previously noted, Mr. Dukes entered a plea and was never tried before a jury; thus, because petitioner clearly did not suffer any prejudice as a result of a joint trial, this issue is moot.

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. Pt. 1, *Israel by Israel v. W.Va. Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388

---

[3] One count of possession with intent to deliver was pursuant to West Virginia Code § 60A-4-401(a)(iii) and one count was pursuant to West Virginia Code § 60A-4-401(a)(i).

2

S.E.2d 480 (1989). We find that petitioner has not satisfied this test, so we decline to address the merits of petitioner's first assignment of error.

In his second assignment of error, petitioner asserts that the indictment should have been dismissed because it was based upon inaccurate testimony before the grand jury. In particular, he is critical of Detective Snider's testimony and the State's version of events, as he claims the grand jury was falsely led to believe that petitioner and Mr. Dukes had an ongoing feud that resulted in the alleged incidents. He admits that the men had a "falling out" but states that the men had little to no communication between them from August 11, 2014, through the late evening of August 12, 2014. Petitioner asserts that the State told the grand jury that petitioner had a .45 Smith & Wesson hand gun when there was no evidence he possessed the same.

This Court has long held that "'[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency.' Syl. Pt., *Barker v. Fox,* 160 W.Va. 749, 238 S.E.2d 235, 235 (1977)." Syl. Pt. 2, *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989). With regard to petitioner's contention regarding a feud between himself and Mr. Dukes, he fails to cite to the record to support his contention that Detective Snider so testified. Furthermore, the difference between a feud and a "falling out" in this instance seems to be a matter of semantics that cannot be construed as "intentional fraud." In addition, while petitioner complains about the officer linking him to a particular weapon, the evidence revealed that a .45 Smith & Wesson hand gun was found in a garbage can along the route petitioner fled, the weapon had an empty clip, and the caliber of the gun matched the shell casings at the scene. When the gun was processed, it was determined that the gun was stolen from petitioner's hometown of Columbus, Ohio. While a witness, Mr. Jiminez, told the detective that the gun on petitioner's bed looked like a Glock .45, this discrepancy is minor under the specific facts of this case. No one disputed that petitioner had a .45 caliber gun while the only other weapon fired on the night in question was Mr. Dukes's .357 revolver. Thus, it is clear the grand jury testimony regarding a .45 Smith & Wesson hand gun does not meet the test articulated in *Barker* and *Pinson*. Therefore, we find that the circuit court did not err in refusing to dismiss the indictment based on the grand jury testimony set forth by petitioner.

Petitioner next argues that the circuit court improperly denied his motion to exclude his statement that he had "no regrets." He looks to Rules 103 and 104 of the West Virginia Rules of Evidence, asserting that his statement was more prejudicial than probative so his motion in limine to exclude the same should have been granted. However, petitioner fails to set forth any analysis or argument as to how this statement was more prejudicial than probative. Rule 403 of the West Virginia Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. Pt. 10, in part, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). In the instant matter, petitioner failed to set forth any argument as to how he was prejudiced by the admission of this statement, instead simply asserting that to be the case. Based on the same, we cannot find that the circuit court abused its discretion in admitting the statement at issue.

Petitioner's fourth assignment of error is his contention that the circuit court improperly denied his motion to suppress evidence concerning the drug-related offenses. According to petitioner, police performed an initial pat down of his person upon his detention, though medical personnel rendering aid to petitioner later removed petitioner's pants to examine his wounds. His pants were left on the side of the road by medical personnel, and when he requested the return of his pants at the scene, the request was denied. At the time of the request, law enforcement officers searched his pants and discovered narcotics. Petitioner argues that while the pants were in plain view, the second search of his pants constituted a violation of his constitutional rights, as there was nothing immediately apparent about them that was incriminating.

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error."

Syl. Pt. 1, *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996). Further, this Court has found that

> "[a] warrantless search of property in plain view is constitutionally permissible provided three requirements are met: '(1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime.' Syllabus Point 3, in part, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974)." Syl. pt. 7, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980).

Syl. Pt. 6, *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147 (1985). Petitioner does not dispute the legality of his arrest or the fact that his pants were in plain view on the side of a public roadway where he was receiving medical treatment. Detective Snider maintained that he did not search petitioner's pants until petitioner asked for them. When he picked them up, he discovered that they were heavy, so he checked them for the weapon that had not yet been located. At that time, he discovered narcotics and over $4,000 in cash. Therefore, when construing the facts in the light most favorable to the State, it is clear that the State established the reasonableness of a warrantless search, and the circuit court did not err in denying petitioner's motion to suppress.

Petitioner next contends that the circuit court improperly denied his motion for judgment of acquittal. Petitioner breaks his argument down into three crimes for which he believes he should have received a directed verdict. First, he addresses brandishing a deadly weapon, asserting that the State presented only the testimony of Mr. Dukes and Wendy Davis to support the charge. He points to testimony from his mother and Mr. Jiminez that place petitioner talking on his cell phone when the second shots were fired. According to petitioner, he had a beer in his free hand, so he could not have pulled a gun and fired. In addressing wanton endangerment

4

involving a firearm, he contends that the crime relates to Mr. Dukes, but his argument seems focused on Ms. Dukes. It is unclear from petitioner's brief what involvement he believes Ms. Dukes, or her alleged physical injuries, had in this crime. He next turns to malicious assault, arguing there is no dispute that Mr. Dukes shot a gun through petitioner's bedroom floor on the evening of August 12 and then fired a second shot in Mr. Dukes's yard in petitioner's presence. Therefore, he asserts that he established self-defense with regard to the charge of malicious assault.

This Court has long held that

"'[u]pon a motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to [the] prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.' *State v. West,* 153 W.Va. 325 [168 S.E.2d 716] (1969)." Syl. pt. 1, *State v. Fischer,* 158 W.Va. 72, 211 S.E.2d 666 (1974).

Syl. Pt. 5, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009). The jury in the underlying case heard all of the testimony petitioner addresses before this Court. As we have stated previously,

[a]n appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Based upon our review of the record before this Court, and viewing the evidence in the light most favorable to the prosecution, we find that there was substantial evidence upon which a jury might justifiably find petitioner guilty beyond a reasonable doubt. Thus, the circuit court did not err in denying his motion for judgment of acquittal.

Petitioner's sixth assignment of error is that the circuit court improperly denied his motion for severance and separate trials of the counts against petitioner because he argues that the drug- and gun-related charges were not part of a common scheme. He continues by asserting that even if the circuit court were correct in finding that the State was required to join the alleged offenses into a single indictment, the jury should not have been allowed to jointly consider the same due to the strong possibility that the jury could find petitioner to be a bad person simply because he allegedly had illegal substances on his person during the relevant time period.

"The joinder of related offenses to meet possible variance in the evidence is not ordinarily subject to a severance motion. In those other situations where

there has been either a joinder of separate offenses in the same indictment or the consolidation of separate indictments for the purpose of holding a single trial, the question of whether to grant a motion for severance rests in the sound discretion of the trial court." Syl. Pt. 6, *State v. Mitter,* 168 W.Va. 531, 285 S.E.2d 376 (1981).

Syl. Pt. 4, *State ex rel. Games-Neely v. Sanders*, 211 W.Va. 297, 565 S.E.2d 419 (2002). As set forth above, officers discovered narcotics and money in petitioner's pants when he was being treated for injuries directly related to the shots fired at Mr. Dukes's residence. The evidence showed that that discovery occurred within a short time of the shooting, during which time officers were still trying to locate the gun used by petitioner during the commission of the other crimes. Therefore, we find that the denial of petitioner's motion to sever was within the sound discretion of the circuit court.

Finally, petitioner argues that the circuit court improperly denied his motion to dismiss for violation of due process. He claims that he detrimentally relied on the unsigned criminal complaint he was given in discovery to prepare his motions to suppress and in preparing his trial strategy and defense. However, he was not provided what he calls the "proper complaint" until later and that he had to adjust his defenses. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides, in relevant part, the following with regard to briefs filed before this Court:

> The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

With regard to this assignment of error, petitioner does not cite to the record related to the provision of the unsigned criminal complaint or the subsequent "proper complaint." He also does not discuss the differences between the two criminal complaints or what adjustments he allegedly made to his defense as a result. For these reasons, we decline to address the merits of petitioner's final assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 18, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II